**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HARBOR INVESTMENT ADVISORY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-0580 |
| | § | |
| MGL CONSULTING LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The court granted summary judgment and entered final judgment for the plaintiff, Harbor

Investment Advisory, LLC, in its declaratory judgment suit against MGL Consulting LLC.  Harbor

moves to recover its attorneys' fees and expenses under its contract with MGL Consulting and under

§ 38.001(8) of the Texas Civil Practice and Remedies Code.  (Docket Entry No. 43).  Harbor also

moves to recover its costs under Federal Rule of Civil Procedure 54(d).  (Docket Entry No. 44).

MGL Consulting responded opposing Harbor's motion for fees and expenses.  (Docket Entry No.

45).  Harbor replied.  (Docket Entry No. 46).

Based on the record; the motion, response, and reply; and the relevant law, Harbor's motion

for attorneys' fees and expenses is granted in part and its motion for costs is granted.  Harbor is

awarded $48,522.82 in attorneys' fees and expenses and $544.00 in costs.

The reasons are explained below.

**I.      Background**

Around December 8, 2011, an attorney for MGL Corporation sent a demand letter to Harbor

asserting that it breached a nonsolicitation clause in the Base Services Agreement between the

parties.  On December 16, 2011, Harbor filed suit against MGL Corporation in the United States District Court for the District of Maryland.  Harbor sought a declaratory judgment that it had not breached the Base Services Agreement's nonsolicitation provision and was not otherwise liable to MGL Corporation.

On January 20, 2012, Harbor filed a summary-judgment motion.  (Docket Entry No. 8). Discovery was stayed pending its resolution.  (Docket Entry No. 11).  On February 15, 2012, MGL Corporation moved to dismiss Harbor's complaint on two grounds: first, that MGL Consulting LLC was indispensable but had not been joined, and second, that the forum-selection clause in the Base Services Agreement required the suit to be filed in Texas.

On March 29, 2012, the Maryland court transferred the case to the United States District Court for the Southern District of Texas under the forum-selection clause.  (Docket Entry No. 23). It appears, however, that due to a clerical error — the District of Maryland used an invalid email address to send the file to the Southern District of Texas — the case sat in limbo for almost a year. After the error was discovered, this court held a status conference on March 28, 2013.  At the conference, the court gave Harbor leave to file an amended complaint substituting MGL Consulting LLC for MGL Corporation.  MGL Corporation's motion to dismiss was denied as moot.

Harbor filed an amended complaint and both parties submitted materials relating to Harbor's summary-judgment motion.  At a hearing, MGL acknowledged that it lacked evidence showing that it had suffered any injury as a result of Harbor's alleged violation of the Base Services Agreement's nonsolicitation provision.  MGL acknowledged that the Agreement's liquidated damages provision was unenforceable and summary judgment was appropriate in Harbor's favor.  This court granted Harbor's motion and entered final judgment.

## II.    Analysis

The Base Services Agreement contains a choice-of-law provision stating that it "shall be construed under and in accordance with the laws of the State of Texas . . . ."  (Docket Entry No. 43, Ex. 1, § 8.13).  Texas law controls the attorney's fee issue.  *Mathis v. Exxon Corp*., 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.").  Texas law provides that "'[p]arties are free to contract for a fee-recovery standard either looser or stricter' than the fee-recovery standards provided by statute, and courts are bound by the parties' choice."  *Mohican Oil & Gas, LLC v. Scorpion Exploration & Prod., Inc*., 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi 2011, pet. denied) (quoting *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009)).

Section 8.04 of the Base Services Agreement states that "[i]f any action at law . . . is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to reasonable costs and attorney's fees in addition to any other relief to which he may be entitled."  The term "reasonable attorney's fees" is given its generally accepted meaning because the Agreement does not give a different definition.  *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense.").  As the prevailing party seeking fees, Harbor has the burden of showing that the fees it seeks are reasonable and adequately supported.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

MGL contends that Harbor cannot recover attorneys' fees and expenses under the Base Services Agreement because Harbor materially breached that Agreement when it sued MGL in the

District of Maryland, in violation of the forum-selection clause. "[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). But a nonbreaching party who treats the contract as continuing "deprives himself of any excuse for ceasing performance on his own part." *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006) (quotation marks and citation omitted). MGL sought and obtained judicial enforcement of the Agreement's forum-selection clause, treating the Agreement as continuing.

Additionally, a nonbreaching party's performance is excused only for obligations that depend on promises the breaching party failed to perform. *See* RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. e (1981) ("Under the rule stated in this Section, only duties with respect to the performances to be exchanged under the particular exchange of promises are affected by a failure of one of those performances."). The forum-selection clause does not depend on or refer to the Base Services Agreement's other provisions, including the attorney's fee provision. Addressing a similar forum-selection provision, the Fourth Circuit Court of Appeals held that "because the forum selection clause was an independent promise bearing no relationship to the alleged prior material breach, the 'first material breach' doctrine was inapplicable as a defense. . . ." *Monster Daddy, LLC v. Monster Cable Prods., Inc.*, 483 F. App'x 831, 835–36 (4th Cir. 2012). MGL is not excused under the first material breach doctrine from paying Harbor's attorney's fees.

Texas courts use the lodestar method for calculating fees. *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided

4

by a specific standard.  This standard is substantially similar under both federal law and state law.").

The first step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who

worked on the case.  The reasonable hourly rate is based on "the prevailing market rates in the

relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The second step is to determine

the number of hours reasonably spent.  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir.

2008).  The court then multiplies the hours reasonably spent by the reasonable hourly rate to

determine the lodestar figure.  *Id.*  Proof of the hours spent should include "the basic facts

underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and

their rate, (3) approximately when the services were performed, and (4) the number of hours

worked."  *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).

A court may increase or decrease the lodestar amount based on the factors set out in *Johnson

v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The twelve *Johnson* factors are

(1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite

to perform the legal services properly, (4) the preclusion of other employment due to this case, (5)

the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount

involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the

undesirability of the case, (11) the nature and length of the professional relationship with the client,

and (12) awards in similar cases.  *Id.* at 717–19.  Texas courts weigh similar factors under Rule 1.04

of the Texas Disciplinary Rules of Professional Conduct.  *See Arthur Andersen & Co. v. Perry

Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brazos Elec. Power Co-op., Inc. v. Weber*, 238

S.W.3d 582, 585–87 (Tex. App.—Dallas 2007, no pet.).  A lodestar reduction is warranted when the

amounts sought are unreasonable after taking the factors into account.  *See Saizan v. Delta Concrete*

*Prods. Co.*, 448 F.3d 795, 801 (5th Cir. 2006) (holding that the trial court could properly reduce a fee award based on a lodestar factor).

Harbor seeks $63,162.50 in fees and $4,230.31 in expenses.  Harbor's lead attorney, Robert S. Brennan, has submitted an affidavit in support of Harbor's fee request.  Brennan is a partner at Miles & Stockbridge, P.C., and has practiced law for 26 years.  Brennan consulted with another Miles & Stockbridge partner, Linda V. Donhauser, about issues related to MGL Corporation's bankruptcy.  Donhauser has practiced law for 24 years and leads the firm's bankruptcy practice. Brennan was also assisted by an associate and a legal assistant.  Harbor seeks an hourly rate of $475 to $485 for Brennan and Donhauser, $290 to $310 for the associate, and $225 for the legal assistant. The hourly rates are reasonable in light of the lawyers' and legal assistant's experience and expertise, the complexity of the case, and the prevailing rates in both Houston and Baltimore.  *See Whitney Bank v. Hancock*, 2013 WL 1404822, at *3–4 (S.D. Tex. Apr. 5, 2013) (awarding fees at hourly rates of approximately $450 to $475 for a commercial litigator with 23 years of experience and $335 to $380 for a litigation associate); *Chaparral Texas, L.P. v. W. Dale Morris, Inc*., 2009 WL 455282, at *5 (S.D. Tex. Feb. 23, 2009) (awarding fees at hourly rates of approximately $400 for a commercial litigator with 21 years of experience and $280 for a commercial litigator with 6 years of experience); *Whitaker v Navy Federal Credit Union*, 2010 WL 3928616, at *6 (D. Md. Oct. 4, 2010) (finding that a $450 rate was reasonable for an experienced attorney with relevant expertise).

Harbor seeks $14,277 for work on case development, background investigation, and case administration; $4,014.00 for work on the pleadings; $32,775.50 for work on motions; $4,320.00 for attending court hearings; and $7,776.00 for preparing the motion for fees and expenses.  Harbor also seeks $4,230.31 in expenses for serving process, messenger services, postage, legal research,

long distance telephone charges, and travel. Harbor submitted billing invoices and records organized both by date and type of work performed.

MGL contends that Harbor's records support $51,498.50 in fees and $3,124 in expenses and do not provide a basis for the amounts sought. MGL's calculations include fees and expenses Harbor incurred up to May 13, 2013 as well as $624.00 in fees and other expenses for which Harbor has not sought reimbursement. MGL's calculations do not include records Harbor submitted showing that it incurred an additional $12,288 in attorney's fees and $1,650.31 in costs after May 13, 2013. When those additional billing records are considered, Harbor's evidence supports $63,162.50 in attorneys' fees and $4,230.31 in expenses. This is consistent with MGL's calculations.

MGL also argues that Harbor should not be awarded fees and expenses that it incurred arguing venue and jurisdiction in Maryland because that work did not materially advance this case. MGL contends that, aside from the work in drafting its pleadings, Harbor should not be reimbursed for any of the fees and expenses it incurred between December 16, 2011, when this suit was filed in Maryland, and March 29, 2012, when this suit was transferred to Texas. Harbor responds that most of the work it did before the case was transferred would have been the same if the case had been filed in Texas from the outset. For example, Harbor incorporated the work on the summary-judgment motion it filed in Maryland into the renewed summary-judgment motion it later filed in Texas. Harbor points out that the affidavits it filed in support of the Maryland and Texas motions were nearly identical. Harbor also points out that its response to MGL's motion to dismiss focused on whether MGL LLC was an indispensable party, not on the Base Services Agreement's forum-selection clause.

7

This court agrees with MGL that Harbor is not entitled to the fees and expenses it would not have incurred had it not initially filed suit in Maryland in violation of the forum-selection clause. Harbor has shown that most, but not all, of the work it did in Maryland, including moving for summary judgment and opposing MGL's motion to dismiss, would have been done if the case had initially been filed in Texas.   But Harbor is not entitled to recover fees that were incurred only because it sued in Maryland despite the forum-selection clause mandating venue in Texas.   Harbor is not entitled to recover fees or expenses for work done in defending its decision to sue in Maryland.   Deducting these fees and expenses appears to result in approximately a 10 percent reduction of the lodestar amount, to $60,653.53.

This court finds that a further 20 percent reduction from the lodestar is justified by Harbor's role in the lengthy delay between when this suit was transferred from Maryland and when it was assigned to this court.   The direct cause of the delay was that the transfer email from the District of Maryland was sent to an invalid address for the Southern District of Texas.   But the direct cause for the delay lasting almost a year was that counsel did nothing to investigate why the case did not progress after the transfer.   Such inaction merits a lodestar reduction of 20 percent.   Harbor is awarded $48,522.82 for its attorneys' fees and expenses.

Harbor also seeks $544.00 in costs under Federal Rule of Civil Procedure 54(d).   "Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party."   FED. R. CIV. P. 54(d)(1).   While a district court has wide discretion in awarding costs, *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 483 (5th Cir. 2006), there is a strong presumption that the prevailing party will be awarded costs.   *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006).   Harbor's request for costs is granted.

**III.      Conclusion**

Harbor's motion for attorneys' fees and expenses is granted in part and its motion for costs is granted.  Harbor is awarded $48,522.82 in attorneys' fees and expenses and $544.00 in costs.

SIGNED on August 2, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge